O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROSA M. VILLEGAS, | ) | Case No. CV 17-03794-KES |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| NANCY A. BERRYHILL, Acting | ) | AND ORDER |
| Commissioner of Social Security, | ) | |
| Defendant. | ) | |
| | ) | |

**I.**

**BACKGROUND**

In September 2013, Plaintiff Rosa M. Villegas ("Plaintiff") applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning March 1, 2012. Administrative Record ("AR") 217-20, 223-25. The Administrative Law Judge ("ALJ") convened a hearing on July 30, 2015, at which Plaintiff, who was represented by a lawyer, appeared and testified. AR 38-69. On August 20, 2015, the ALJ issued a written decision

denying Plaintiff's request for benefits. AR 11-25.

The ALJ found that Plaintiff suffers from the medically determinable severe impairments of degenerative disc disease and osteoarthritis. AR 19. Despite these impairments, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform the exertional demands of medium work with only "frequent" postural activities (i.e., climbing ladders, ropes, scaffolds, stairs and ramps; balancing; stooping; kneeling; crouching; and crawling). AR 20 (citing 20 C.F.R. §§ 404.1567; 416.967). Medium work generally requires lifting up to 50 pounds occasionally and 25 pounds frequently, and standing/walking for up to six hours per workday. Social Security Ruling ("SSR") 83-10, 1983 WL 31251.

Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform her past relevant work as a garment sorter (light work), hand packager (medium work), and quality control inspector (light work). AR 24, 60. The ALJ therefore concluded that Plaintiff was not disabled. AR 25.

## II.
## ISSUE PRESENTED

Plaintiff's appeal raises the sole issue of whether the ALJ's RFC determination is supported by substantial evidence. (Dkt. 19, Joint Stipulation ["JS"] at 4.) Only one doctor – a non-examining state agency physician Dr. Estrin – provided an opinion about Plaintiff's RFC. In December 2013, Dr. Estrin considered Plaintiff's medical records and opined that Plaintiff could perform medium work with frequent postural activities, but was limited to "occasional" pushing/pulling with her right leg. AR 76-77.

The ALJ ultimately gave "no substantial weight" to Plaintiff's treating physicians' opinions and only "partial weight" to Dr. Estrin's opinion, accepting that Plaintiff could do medium work but rejecting his limitation on right leg pushing/pulling. AR 23. The ALJ explained, however, that even if he had accepted Dr. Estrin's opinion in full, it would not have changed the ALJ's ultimate

2

determination, because Plaintiff's prior jobs do not require pushing or pulling with lower extremities, per their description in the Dictionary of Occupational Titles. AR 23 n.1.

Plaintiff argues that (1) Dr. Estrin's opinion does not constitute substantial evidence, because Dr. Estrin did not have an opportunity to review Plaintiff's 2014 and 2015 medical records, and (2) the ALJ cherry-picked the 2014-2015 medical evidence to support his conclusion that Plaintiff could do medium work. (JS at 4-11.) For the reasons discussed below, the Court AFFIRMS the ALJ's decision.

## III.
## LEGAL STANDARDS

**A.** **Administrative Burdens of Production and Proof.**

A person is "disabled" for purposes of receiving Social Security benefits if he is unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of producing evidence to support a finding of disability. See 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). A claimant must produce evidence demonstrating that he/she was disabled within the relevant time period. Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995). As the Code of Federal Regulations further explains:

> [Y]ou have to prove to us that you are blind or disabled. You must inform us about or submit all evidence known to you that relates to whether or not you are blind or disabled. This duty is ongoing and

requires you to disclose any additional related evidence about which you become aware. This duty applies at each level of the administrative review process, including the Appeals Council level if the evidence relates to the period on or before the date of the administrative law judge hearing decision. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 416.912(a) (version in effect from April 20, 2015 to March 26, 2017).[1]

At step four of the sequential analysis, the claimant has the burden to prove that he/she cannot perform any prior relevant work "either as actually performed or as generally performed in the national economy." Carmickle v. Comm'r of SSA, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). The ALJ must make specific findings as to (1) "the claimant's residual functional capacity"; (2) "the physical and mental demands of the past relevant work"; and (3) "the relation of the residual functional capacity to the past work." Id. at 845 (citing SSR 82-62, 1982 WL 31386).

**B.      Rules for Determining a Claimant's RFC.**

A claimant's RFC is an assessment of his/her ability to do sustained, work-related physical and mental activities in a work setting on a regular and continuing basis of eight hours a day, for five days a week, or equivalent work schedule. SSR 96-8p, 1996 WL 362207. The RFC assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments. Id. In determining a

---

[1] The Court applies the version of the regulations in effect when the ALJ issued the August 20, 2015 decision. See Rose v. Berryhill, 256 F. Supp. 3d 1079, 1083, n.3 (C.D. Cal. June 13, 2017).

4

claimant's RFC, the ALJ should consider those limitations for which there is support in the record, but the ALJ need not consider properly rejected evidence of non-severe impairments or subjective complaints. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("Preparing a function-by-function analysis for medical conditions or impairments that the ALJ found neither credible nor supported by the record is unnecessary."); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("The ALJ was not required to incorporate evidence from the opinions of Batson's treating physicians, which were permissibly discounted.").

**C.    Standard of Review on Appeal.**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

# IV.
# DISCUSSION

**A.    Overview of the Relevant Medical Evidence.**

Plaintiff provided treating records from Clinica Romera (AR 327-58, 392-94), Dr. Daniel Tran of the Ardmore Medical Group (AR 397-436, 471-95, 512-

25), orthopedic surgeon Dr. Charles Alexander of the Los Angeles Arthritis and Joint Replacement Medical Group (AR 376-80, 465-69), Dr. Kevin Pelton of LA Orthopaedic Surgery Specialists (AR 445-47, 497-99), and Dr. Shane Pak of Pacific Orthopaedic Medical Group (AR 505-11), as well as imaging records (AR 449-63, 500-01).

Dr. Estrin's opinion mentions only two prior treating records: (1) a September 14, 2013 right knee x-ray (which is almost certainly a typographical error and intended to reference Plaintiff's September 14, 2012 "normal" knee imaging study[2]) and (2) a June 12, 2013 progress note from Clinica Romera. AR 77. That progress note says Plaintiff was complaining of left leg swelling and right knee pain, but she was not taking any pain medication and she denied instability. AR 329. Regarding Plaintiff's right knee, the clinic noted, "FROM [full range of motion], (+) LJL tenderness [positive for lateral joint line tenderness], Ø L, Dr, Mo, Ø effusion." Id. The progress note also says "® knee pain ć IDK [right knee pain with internal derangement]." Id.

In the JS, Plaintiff summarizes her subsequent medical records in chronological order, starting with a right knee MRI taken on November 7, 2013, which revealed osteoarthrosis with "focal full-thickness cartilage defect within the lateral femoral weightbearing surface cartilage and an intra-articular body in the posteromedial joint recess" (AR 451) and concluding with April 2015 records discussing "bilateral knee osteoarthritis" (AR 522). (JS at 5-7.) Plaintiff's summary largely focuses on what Plaintiff reported to her doctors rather than what her doctors observed. (Id.)

---

[2] In the JS, neither party identifies where Plaintiff's September 14, 2013 x-ray results can be found in the AR. Imaging results from September 14, 2012, however, are at AR 349-50. Those results say, "normal study," which is how Dr. Estrin summarizes the "2013" record. Compare AR 77 and AR 50.

6

**B.     The ALJ's Assessment of the Evidence.**

The ALJ acknowledged that Plaintiff "does have a long history of right knee pain" with intermittent "swelling and tenderness." AR 22. The ALJ found that Plaintiff's knee pain did not limit Plaintiff from performing medium work for several reasons. First, the ALJ cited treating records consistently finding that Plaintiff had a full range of motion in her right knee. AR 22, citing AR 329 and AR 404.

Second, the ALJ cited records that Plaintiff's knee pain had responded well to injections. AR 22, citing Exhibit 5F. That exhibit contains the following records:

• <u>April 2014 "new patient evaluation" by Dr. Alexander</u>. He noted, "patient has been complaining of right knee pain for about a year." AR 377. Her "right knee has full extension and flexion, no effusion, and no synovitis" but "definite medical as well as lateral joint line pain." <u>Id.</u> Dr. Alexander reviewed a prior x-ray and concluded it showed "minimal, if any, loss of joint space height, and very mild arthritic changes." <u>Id.</u> He diagnosed her with internal derangement of the right knee and gave her an injection, causing "some improvement." AR 377-78. He recommended physical therapy and a follow-up appointment in six weeks. AR 378.

• <u>May 2014 progress note</u>. Concerning Plaintiff's right knee pain, the medical assistant ("MA") wrote, "injection still working – moderate helpful" and "no PT – she never called. Doing well. Normal gait." AR 376. This record rates Plaintiff's pain as "0" on a scale of 0-10. <u>Id</u>.

Third, the ALJ noted that Plaintiff had declined physical therapy for her knee, citing the same records. AR 22.

Fourth, the ALJ found that Plaintiff's claims of disabling knee pain were not supported by her x-rays and MRIs, citing the x-ray discussed by Dr. Alexander (AR 377) and the MRI taken on November 7, 2013 (AR 451). AR 22. While the

ALJ acknowledged that the November 2013 MRI revealed signs of osteoarthritis, the ALJ concluded that the disease was not causing Plaintiff knee pain inconsistent with medium work, because her later "physical examinations continued to be largely unremarkable with normal balance, gain, posture, and normal strength and tone." AR 22, citing AR 471-95 (2014 treating records from Ardmore Medical Group).

Plaintiff's treating records from Ardmore include the following:

• <u>January 20, 2014 new patient initial health assessment</u>. AR 474. The MA wrote, "She complains of moderate right knee pain for the past one year. It has hampered her ability to ambulate comfortably. She can now only walk up to three city blocks without resting. … Her treatment with her previous provider included radiographic study and pain medication. No other joint is affected. Otherwise, she is doing well." <u>Id.</u> The MA also noted, "Mild active decrease range of motion of the right knee due to discomfort. Right knee without swelling or warmth." AR 473. The MA observed, "Gait, stance and balance are normal." <u>Id.</u> The recommendation was to "continue with ibuprofen as needed" and engage in "routine daily exercise" while Ardmore waited to receive her previous right knee x-ray. AR 472.

• <u>January 28, 2014 follow-up appointment</u>. AR 476. Ardmore interpreted her 2014 x-rays as showing "mild right knee degenerative changes …" attributed to osteoarthritis. <u>Id.</u> Plaintiff reported that her right knee pain has "progressively worsened" over the last year. AR 476. She was referred to "orthopedics" to evaluate her knee pain. AR 475.

• <u>February 26, 2014 second follow-up appointment</u>. AR 478. Ardmore noted that prior records from Clinica Romero showed a history of osteoarthritis of the knee, treatment with NSAIDs, and "no physical therapy or specialist consultation." <u>Id.</u> Upon examination, both Plaintiff's knees were "without swelling or warmth. No significant decrease range of motion. Mild tender

anteriorly at patella and patellar tendon." Id. While she was still "awaiting orthopedics consultation," she was encouraged to walk and engage in exercise to lose weight. Id.

- <u>March 20, 2014 third follow-up appointment</u>. AR 480. Plaintiff reported worsening pain in her right knee causing difficulty walking. Id. Ardmore noted that she had full range of motion in both knees, but "mild tenderness" in the right knee. Id. She had an orthopedics consultation scheduled for April 3, 2014, which was her appointment with Dr. Alexander, discussed above. AR 480, 377.

- <u>May 5, 2014 Ardmore appointment</u>. AR 482. This appointment concerned a skin rash and merely noted, "She has been consulting with orthopedics for the knee pain." Id.

- <u>June 26, 2014 Ardmore appointment</u>. AR 484. The MA noted that Plaintiff has "moderate pain of the right knee" but "injection of the right knee [by Dr. Alexander] has alleviated some symptoms. [Plaintiff] has failed to obtain MRI of the right knee as requested by orthopedics. However, she has been scheduled for physical therapy sessions …." Id. The MA again observed that both knees had a full range of motion with "mild" tenderness of the right knee. Id.

- <u>July 16, 2014 Ardmore appointment</u>. AR 486. Plaintiff provided "no new complaint" but still had "moderate pain of the right knee."

The administrative record contains later medical evidence also discussing Plaintiff's knee pain and a new complaint of back pain, including:

- <u>October 1, 2014</u>: Plaintiff consulted with Dr. Pelton complaining of back pain. AR 498. He observed that her gait was "stable" but "antalgic on the right but not broad-based." Id. He also observed normal muscle tone in her lower extremities and that her "motion is without pain, crepitus, or evident instability." Id.

- <u>November 14, 2014</u>: MRI study of Plaintiff's lumbar spine. AR 500-01. The MRI revealed various abnormalities, including "multilevel spondylosis with

posterior disc bulges," "mild spinal canal stenosis," and "mild to moderate" neural foraminal narrowing.  AR 500.

• <u>April 15, 2015</u>:  Ardmore observed, "Gait, stance and balance are normal."  AR 520.

• <u>April 22, 2015</u>:  Plaintiff consulted with Dr. Pak complaining of lower back pain.  AR 505.  She denied "any additional symptoms."  <u>Id.</u>  Upon examination, he observed no tenderness or swelling of either knee, and a "full and painless" range of motion in both knees.  AR 507.  She had normal muscle tone, no instability, and 5/5 lower extremity strength.  <u>Id.</u>  He nevertheless noted that her gait was "antalgic due to pain."  AR 508.  He attributed her "difficulty walking due to degenerative dz [disease] of the L [lumbar] spine."  AR 509.  He did not mention osteoarthritis.  He recommended physical therapy and pain medication.  <u>Id.</u>  He also prescribed a 4-point cane.  AR 510.

• <u>April 30, 2015</u>:  Ardmore again noted that Plaintiff "can ambulate well."  AR 522.  Pain medications "meloxicam and naproxen have been effective in controlling her symptoms."  <u>Id.</u>  She had no decreased range of motion in her extremities and "gait, stance and balance are normal."  AR 523.  She was encouraged to engage in routine daily exercise.  AR 525.  This is the last progress note in the administrative record.

The ALJ discussed all the above-listed treating records.  AR 22-23.  He noted that at the hearing, while Plaintiff's counsel initially claimed to have submitted records showing Plaintiff's participation in physical therapy, counsel later realized that she did not have such records.  AR 23, citing AR 44-47.  The administrative record still contains no physical therapy reports.  The ALJ also noted that Plaintiff mentioned no need for a cane at the hearing, although she testified that she walks slowly "because [her] knees are very swollen …."  <u>Id.</u>, citing AR 52.

## C. The ALJ's RFC Determination Is Supported by Substantial Evidence.

Plaintiff contends that she was disabled as of March 1, 2012. AR 217. Dr. Estrin reviewed her medical records in December 2013, nearly two years after Plaintiff's claimed onset date. In the JS, Plaintiff does not argue that Dr. Estrin's opinion was inconsistent with any medical records that pre-date his report. The opinion of a non-examining physician such as Dr. Estrin constitutes substantial evidence when it is supported by and consistent with other evidence in the record. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Thus, Dr. Estrin's opinion constitutes substantial evidence supporting the ALJ's finding that Plaintiff could perform medium work with the additional specified limitations on postural activities at least from March 2012 through December 2013.

Plaintiff argues that her 2014-2015 medical records reveal more functional limitations, such that no reasonable person would view Dr. Estrin's opinion as reliable evidence of her RFC in 2014-2015. (JS at 8.) The administrative record, however, shows that during 2014-2015, treating medical sources generally described Plaintiff's knees as having a full range of motion with no observed deficits in gait. See, e.g., AR 404, 474, 478, 480, 484, 507, 520, 522. Plaintiff obtained significant pain relief through injections (see AR 376 [reporting no post-injection knee pain]) and her primary treating physician observed that "meloxicam and naproxen have been effective in controlling her symptoms." AR 522. These records show Plaintiff pursued limited treatment consistent with suffering non-disabling levels of pain (e.g., medication, no documented physical therapy, no surgery, no pain management specialists). Since Plaintiff's medical records do not show a significant change in Plaintiff's functional limitations over time, the ALJ could reasonably continue to rely, in part, on Dr. Estrin's opinion even when assessing Plaintiff's RFC in 2014 and 2015.

Plaintiff accuses the ALJ of cherry-picking only benign medical records saying, "the ALJ stated that Villegas had normal gait. AR 23. But the ALJ

ignored those findings of abnormal gait…." (JS at 9.) Plaintiff asserts that the "overall clinical picture reflects that [she] is, in fact, limited in her gait and ability to ambulate." (JS at 11.)

The only abnormal findings concerning Plaintiff's gait cited by Plaintiff are at AR 445 and AR 498 (Dr. Pelton's October 1, 2014, observation "gait is antalgic on the right") and AR 508 (Dr. Pak's April 22, 2015, observation "gait is antalgic due to pain").[3] Notably, within days on either side of Dr. Pak's opinion, Plaintiff's treating sources at Ardmore reported that her gait was normal (4/15/15 record at AR 520; 4/30/15 record at AR 523) and the later record specifically noted that she "can ambulate well." AR 522. While Plaintiff's interactions with Dr. Pak caused him to prescribe her a cane, she did not use one at the hearing or tell the ALJ that she ever used one. The ALJ did not err in concluding that the weight of the evidence supports a finding that Plaintiff could ambulate well during the entire period of claimed disability, consistent with the ability to perform medium work.

At the hearing, Plaintiff told the ALJ she could no longer work because of lower back pain.[4] AR 52. The first mention of back pain in the administrative record is when Plaintiff consulted with Dr. Pelton in October 2014, many years after her claimed disability onset date. AR 498. He referred her for an MRI in November 2014 which revealed various abnormalities consistent with

---

[3] Many records reflect that Plaintiff told her doctors she had difficulty walking, but such records do not reflect medical findings. Plaintiff contends that the ALJ "ignored [her] rather consistent report of symptoms regarding difficulties in ambulation." (JS at 9.) Not so. The ALJ explained why he found Plaintiff's reports concerning the limiting effects of her pain unsupported (AR 21-23), and Plaintiff did not challenge that finding on appeal.

[4] At the July 30, 2015 hearing, Plaintiff testified that she last worked around 2012 as a packer for a shampoo company, but was laid off when "a lot of people got laid off." AR 49. In her application to the Court to proceed in forma pauperis, Plaintiff declared that she last worked in February 2015. (Dkt. 3.)

12

osteoarthritis and degenerative disc disease. AR 500. The Ardmore progress notes from April 2015 discussed above, however, post-date this MRI, yet still note that Plaintiff had a normal gait and could ambulate well. AR 520-23. The same progress notes also state that "meloxicam and naproxen have been effective in controlling her symptoms." AR 522. Substantial evidence, therefore, supports the ALJ's conclusion that Plaintiff's back pain did not cause functional limitations inconsistent with medium work.

In the JS, Plaintiff does not point to any medical opinions other than Dr. Estrin's discussing how much weight Plaintiff can lift. The fact that Plaintiff suffers from osteoarthritis and degenerative disc disease is not proof that Plaintiff cannot perform lifting consistent with medium work. As the party bearing the burden of production and proof, Plaintiff cannot assert that the ALJ committed legal error by relying on the medical evidence that Plaintiff provided, even if scant.

## V.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED.

Dated: February 06, 2018

*Karen E. Scott*
_____
KAREN E. SCOTT
United States Magistrate Judge